IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01724-RBJ

VACHAGAN AKOPYAN, and ARMENUHI SIMONYAN,

    Plaintiffs,

v.

Jefferson B. Sessions III, Attorney General of the United States, *et al.*,

    Defendants.

---

# ORDER

---

This matter is before the Court on the plaintiffs' motion for summary judgment [ECF No. 40]. Because the Local Rules of Practice of the District of Colorado do not permit motions for summary judgment in Administrative Procedure Act cases, D.C.COLO.LAPR 16.1(b), the parties have agreed to treat plaintiffs' motion for summary judgment as an opening brief. Plaintiffs are appealing from a September 10, 2015 decision of the Board of Immigration Appeals ("BIA"), affirming the February 9, 2015 decision of the United States Citizen and Immigration Services' to deny Plaintiff Simonyan's I-130 petition for alien relative filed on behalf of her spouse, Plaintiff Akopyan.

## I.    BACKGROUND

This case arises out of the United States Citizen and Immigration Services' (USCIS) denial of two I-130 Petitions for Alien Relatives filed for the benefit of Vachagan Akopyan. An I-130 petition is filed by a U.S. Citizen or lawful permanent resident ("LPR") on behalf of an alien relative to permit that relative to adjust status and become a lawful permanent resident in

the United States.  USCIS initially adjudicates I-130 petitions.  8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).  If a USCIS officer determines the petition lacks sufficient evidence to grant, the officer will issue a Notice of Intent to Deny ("NOID") that specifies "the type of evidence required . . . or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond."  8 C.F.R. §103.2(b)(8)(iv).  If USCIS denies the petition, the officer notifies the petitioner of the reasons for the denial and of the right to appeal to the Board of Immigration Appeals ("BIA").  8 C.F.R. §204.2(a)(3); 8 C.F.R. §§ 1003.1(b)(5), 1003.3(a)(2).

In 2008, Chelsea Taylor, a United States citizen, filed an I-130 Petition for Alien Relative on behalf of plaintiff Mr. Akopyan, her husband at the time.  ECF No. 35, Administrative Record [AR] at 226-27, 236-40.  Three years later, in November 2011, Mr. Akopyan and Ms. Taylor divorced.  At this point in time, USCIS had not rendered any decision on the I-130 petition filed in 2008.  Then, in December 2011, Mr. Akopyan married Armenuhi Simonyan.  *Id.* at 172.  Ms. Simonyan filed an I-130 petition for Plaintiff Akopyan.  *Id.* at 164-67.  Two years later, in May 2013, USCIS interviewed Ms. Taylor by telephone regarding her terminated marriage to Mr. Akopyan.  *Id.* at 321.  Based on that interview, USCIS determined that the marriage between Ms. Taylor and Mr. Akopyan was for the sole purpose of circumventing immigration laws.  *Id.* at 222-24.  USCIS denied the petition Ms. Taylor filed five years prior, stating that the petition was denied both because the couple divorced and because they determined the existence of marriage fraud.  *Id*.  Mr. Akopyan was not notified of this denial, as attempts to mail the decision to him were unsuccessful.  ECF No. 27 at 5.

In December 2014, USCIS issued a Notice of Intent to Deny (NOID) letter to Ms. Simonyan regarding the I-130 petition she filed for her husband in 2012.  Even where a valid

2

marriage exists, USCIS will not approve an I-130 petition if fraud or attempted fraud by the alien beneficiary of the I-130 petition in a prior marriage is evident in the record. 8 U.S.C. §1154(c). USCIS's finding of fraud in the previous marriage between Mr. Akopyan and Ms. Taylor was the basis for denial of the I-130 petition filed by Ms. Simonyan for Mr. Akopyan in 2012. ECF No. 41 at 3.

On January 7, 2014, plaintiffs responded to the Notice of Intent to Deny Ms. Simonyan's I-130 petition by submitting documents and photographs that intended to establish Mr. Akopyan did indeed reside with Ms. Taylor as her husband in Maine and in Colorado. AR at 81-161. In September 2014, USCIS then interviewed Ms. Taylor a second time. In this interview Ms. Taylor provided a written sworn statement answering questions about her marriage to Mr. Akopyan. *Id.* at 315-20. Based on this interview and an ICE investigation into a marriage fraud scheme orchestrated by Bozhidar Bakalov that uncovered documents tying Ms. Taylor and Mr. Akopyan to this scheme as "customers," USCIS issued another NOID to Ms. Simonyan on December 8, 2014. *Id.* at 76-80. This NOID provided 30 days for the petitioner to submit any further evidence to overcome the reasons for denial. *Id.* at 79. Plaintiffs sought extension of this deadline, and USCIS denied this request and issued a denial of the I-130 petition. *Id.* at 54-60. Plaintiffs then appealed this decision to the Board of Immigration Appeals ("BIA"). *Id.* at 40. The BIA affirmed USCIS's denial. *Id.* at 3-6.

On November 20, 2017 plaintiffs filed their First Amended Complaint, ECF No. 27, the operative complaint here, asking for an order to set aside the BIA decision denying Plaintiffs' I-130 visa petition under the Administrative Procedures Act and a declaration that the decision violated the Due Process Clause of the Fifth Amendment. In January, Defendants submitted the complete administrative record. ECF No. 35. Plaintiffs filed a motion for summary judgment

that the parties agreed to treat as an opening brief, ECF No. 40, and Defendants filed a response, ECF No. 41. Plaintiffs did not file a reply within the deadline. This issue has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

### A. Administrative Procedure Act

Under the APA, a reviewing court will "hold unlawful and set aside agency action, findings, and conclusions" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In addition to alleging that the denial of the 2008 and 2012 I-130 petitions were arbitrary and capricious, plaintiffs also challenge the denials under provisions of the APA that direct a reviewing court to set aside agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" 5 U.S.C. §706(2)(C), "without observance of procedure required by law;" 5 U.S.C. §706(2)(D); "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or" 5 U.S.C. §706(2)(E), "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court[,]" 5 U.S.C. §706(2)(F). Beyond listing these provisions, plaintiffs make no argument as to how the I-130 denials violated 5 U.S.C. §706(2)(C), (E), or (F). ECF No. 27 at 11. Therefore, I will focus my analysis on whether the BIA's affirmance of USCIS's denial of the petitions was arbitrary and capricious or without observance of procedure required by law.[1] *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

---

[1] The BIA's decision, and not the decision of USCIS, is the final agency action. Because a reversal of USCIS's decision would have no legal effect, Plaintiffs must aim their challenges at the decision of the BIA to affirm USCIS's denial. Instead, throughout their brief, plaintiffs challenge the decisions of

4

Typically, "[a]n agency's action is entitled to a presumption of validity, and the burden is upon the petitioner to establish the action is arbitrary or capricious." *Sorenson Commc'ns, Inc. v. F.C.C.*, 567 F.3d 1215, 1221 (10th Cir. 2009). Once agency action is challenged as arbitrary or capricious, a district court reviews that action under the APA as if it were an appellate court. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). As part of the appeal, the court "ascertain[s] whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Id.* at 1574 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)). That is, the court "must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *Id.*

A court will set aside agency action "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citing *State Farm*, 463 U.S. at 43) (internal quotation marks omitted). Furthermore, "[b]ecause the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 1575 (citing *State Farm*, 463 U.S. at 50) (internal quotation marks and brackets omitted).

**B. Due Process Clause of the Fifth Amendment.**

---

USCIS. I will infer that plaintiffs are challenging BIA's affirmation of USCIS's decision on the same grounds as they challenge USCIS's decision.

Plaintiff also asks for a declaratory judgment that denial of Ms. Simonyan's I-130 petition violated Fifth Amendment Due Process protections. Defendants ask the Court to dismiss this claim as well. To state a claim under the Due Process Clause of the Fifth Amendment, a plaintiff must allege a deprivation of life, liberty, or property, without due process of law. U.S. Const. amend. V. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the constitution. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Therefore, a threshold requirement to a due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution. *Board of Regents v. Roth*. 408 U.S. 564, 569 (1972). A protected property interest exists when a person has a reasonable expectation of entitlement deriving from "existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577.

An I-130 petition for an immediate relative is nondiscretionary where the petitioner shows she meets the requirements. Section 204(b) of the Immigration and Nationality Act provides that "[a]fter an investigation of the facts in each case, the Attorney General[2] *shall*, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petitions is made is an immediate relative . . . *approve the petition*." 8 U.S.C. §1154(b) (emphases added). Citizens are entitled to a grant of immediate relative status for an alien spouse as long as the petitioner and spouse meet the requirements for eligibility, and this

---

[2] The Immigration and Nationality Act initially granted this authority to the Attorney General, but this authority was delegated to the Secretary of Homeland Security with the 2003 creation of the Department of Homeland Security. *See* 6 U.S.C. §271(b)(1). Where I refer to the role of the Attorney General contemplated by the Immigration and Nationality Act in this opinion, the Secretary of Homeland Security holds these functions now.

6

protected interest is entitled to the protections of due process. *See Ching v. Mayorkas,* 725 F.3d 1149, 1156 (9th Cir. 2013).

Defendants argue that the regulations governing USCIS's determination of I-130 petitions and the issuance of a Notice of Intent to Deny are sufficient to meet constitutional due process requirements. "Due Process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks omitted). A court balances the governmental and private interests affected in looking at three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

### III. ANALYSIS

**A. Motion for Judgment on the Administrative Record.**

Plaintiffs argue that the denials of the 2008 and 2012 I-130 visa petitions were in violation of the APA. I find that neither plaintiff has standing to challenge the denial of the 2008 I-130 petition. Though plaintiffs can challenge the denial of the 2012 I-130 petition, including the use of findings from the 2008 I-130 petition in the adjudication of the 2012 petition, I conclude the that there is substantial evidence to support the denial of the petition.

**1) 2008 I-130 Petition**

USCIS denied the 2008 I-130 Petition on two bases. First, Mr. Akopyan was divorced from Ms. Taylor before USCIS adjudicated the petition. Therefore, Mr. Akopyan was statutorily

7

ineligible to be classified as a spouse when USCIS adjudicated the petition. 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. §§ 204.2(a)(1), (2). Second, the agency found fraud in the marriage between Mr. Akopyan and Ms. Taylor. Though Mr. Akopyan is no longer seeking to adjust status as a beneficiary of Ms. Taylor, he seeks to set aside the finding of fraud in relation to that decision.

Defendants argue that neither plaintiff has standing to challenge the denial of the 2008 I-130 petition. I agree. To establish Article III standing, a plaintiff "must have suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The injury must also be "fairly . . . trace[able] to the challenged action of the defendant," and it must be "likely" that the "injury will be redressed by a favorable decision." *Id.* at 560-561 (internal quotations and citations omitted). Ms. Simonyan was neither the petitioner nor beneficiary of the 2008 I-130 petition and cannot establish an injury in fact from the denial of this petition. Even though Mr. Akopyan can establish an injury in fact as the intended beneficiary of this petition, he fails the "redressability" prong of the standing inquiry. USCIS denied the petition both because of a finding of fraud and because Mr. Akopyan and Ms. Taylor divorced. Setting aside a finding of fraud would not affect the denial of the 2008 petition because the denial was also based on Mr. Akopyan's divorce from Ms. Taylor prior to adjudication of the petition, making him ineligible as a beneficiary of Ms. Taylor's I-130 petition.

**2) 2012 I-130 Petition**

A finding by USCIS that an alien has attempted or conspired to enter into a marriage to evade immigration laws must be supported by "substantial and probative" evidence. 8 C.F.R. § 204.2(a)(1)(ii); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). Though neither plaintiff has standing to challenge the denial of the 2008 petition, the question remains whether the BIA was correct in holding that it was appropriate for USCIS to consider the findings of the 2008 I-130 petition in adjudicating the 2012 I-130 petition. The Immigration and Nationality Act prohibits the approval of a visa petition filed on behalf of an alien who the Attorney General has determined has attempted or conspired to enter a marriage for the purpose of evading the immigration laws. 8 U.S.C. §1154(c). Although it is not necessary that the alien have been prosecuted for the attempt or conspiracy, substantial and probative evidence of the attempt or conspiracy must be in the alien's file. 8 C.F.R. § 204.2(a)(1)(ii); *Tawfik*, 20 I & N Dec. at 167.

The BIA has held that the district director makes this determination on behalf of the Attorney General in the course of adjudicating any subsequent visa petition from that alien. *Matter of Samsen*, 15 I. & N. Dec. 28 (BIA 1974). The central question for the district director in evaluating a spousal visa petition suspected of fraud is the intent of the parties at the time of the marriage. *Matter of McKee*, 17 I. & N. Dec. 332, 334 (BIA 1980). The conduct of the spouses after the marriage is probative of their intent at the time of marriage. *Bark v. INS*, 511 F. 2d 1200, 1202 (9th Cir. 1975). In determining whether the beneficiary alien has previously engaged in marriage fraud, "the district director may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage. Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but rather, should reach his own independent conclusion based on the evidence before him." *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990) (citing *Matter of F-*, 9 I & N Dec. 684 (BIA (1962)). If the district director

finds that substantial and probative evidence supports a finding of marriage fraud in the prior marriage under 8 U.S.C. §1154(c), then the petitioner bears the burden of rebutting the finding to show that the prior marriage was *bona fide*. 8 C.F.R. § 204.2(a)(1)(ii); *Tawfik*, 20 I & N Dec. at 167.

Here, the district director did not rely solely on the 2008 decision in denying the 2012 decision. USCIS conducted a new investigation in relation to the 2012 petition and denied the petition "based on a finding of fraud stated in the 2008 Petition Decision, evidence gathered in 2014, as well as an ICE investigation." ECF No. 40 (Pl. Br.) at ¶13. Plaintiffs concede that "the 2008 Petition Decision was issued while the investigation as to Plaintiff Akopyan's marriage to Ms. Taylor was still ongoing in connection with the 2012 Petition, as USCIS proceeded to subpoena records of lease agreements in October 2014 and also conducted a follow up in-person interview with Ms. Taylor in September 2014." ECF No. 40 at 6; AR 285-286, 315-320. The BIA review of this decision also emphasized that the "record reflects that the Director did not rely solely on the 2013 decision to deny the petition under section 204(c) of the Act but rather made an independent analysis of the record." AR at Findings from investigations related to the 2008 decision were properly considered as relevant evidence in conjunction with other evidence in determining whether Mr. Akopyan had previously engaged in marriage fraud. *See Tawfik*, 20 I & N Dec. at 167.

Plaintiffs argue that in denying the 2012 petition, USCIS violated the APA because they "failed to inform Plaintiff Akopyan of the full scope of the derogatory information used against him, failed to obtain additional testimony in light of Ms. Taylor's 'questionable' testimony; and failed to conduct proper fact-finding to support the substantial and probative standard for marriage fraud." The administrative record leads me to disagree.

First, Mr. Akopyan takes issue with the fact that he was not issued a NOID in relation to the 2008 petition and given the opportunity to contest the factual basis for the finding of fraud. However, plaintiffs had notice of these findings when Ms. Simonyan was issued a NOID for the 2012 petition, and they were given an opportunity to contest the findings in submitting a response. This first NOID, issued on December 24, 2013, notified plaintiffs that:

> On November 4, 2008, Mr. Akopyan and Ms. Taylor appeared for an interview. . . Ms. Taylor was again interviewed on May 21, 2013, by a duly appointed special agent. When asked, Ms. Taylor admitted that her marriage to Mr. Akopyan was for the sole purpose of him obtaining legal permanent resident status in the United States and that at the time of the first interview regarding the marriage to Mr. Akopyan, she was dating someone else. . . . USCIS has determined that Mr. Apokyan and Ms. Taylor did not, in fact, ever live together as husband and wife.

AR at 162.

The NOID also stated that USCIS would not make a final decision on the petition for thirty days, and that plaintiffs could submit any evidence that could overcome the reasons for the denial. AR at 162. Plaintiffs did respond to this NOID and submitted 80 pages of evidence, such as photographs, banking statements of accounts in both names, a joint tax return, etc., intended to show the *bona fides* of the marriage between Ms. Taylor and Mr. Akopyan. *Id.* at 80 – 161. Here, the plaintiffs exercised their right to respond to USCIS's findings regarding the legitimacy of Mr. Akopyan's previous marriage.

USCIS then issued a second NOID on December 8, 2014 that included more evidence to support a finding of marriage fraud. AR at 76-79. Between the issuance of the first and second NOID, USCIS interviewed Ms. Taylor a second time in person, and she provided further sworn statements regarding her marriage to Mr. Akopyan. *Id.* at 78. The second NOID explained how the documents submitted by the plaintiffs were insufficient to support a conclusion that Mr. Akopyan and Ms. Taylor resided together during their marriage as they had represented to

11

USCIS. *Id.* at 77. I agree that a review of the documents submitted by the plaintiffs "show that Ms. Taylor came to Colorado from October 13-15, 2009," but that "there is no evidence that Ms. Taylor actually resided in Colorado, such as employment, bank statements showing her making financial transactions and purchases in Colorado, or a lease for Mr. Akopyan's apartment at . . . Centennial, Colorado, where he resided for ten months when he moved to Colorado." *Id.* at 78. The NOID also disclosed that USCIS's investigation uncovered that during the period that Mr. Akopyan and Ms. Taylor were allegedly living together in Colorado, Ms. Taylor pled guilty to a criminal charge in Ohio State court and received a traffic ticket in Hamilton County, Ohio where she reported her residence as an address in Crescent Springs, Kentucky. *Id.*

Conflicting evidence about Ms. Taylor's residency was not the only information relied upon by USCIS and the Board of Immigration Appeals in affirming this denial. Substantial weight was given to evidence uncovered in an ICE investigation of an organization specializing in arranging fraudulent marriages between United States citizens and nationals from former Soviet countries and tying Ms. Taylor and Mr. Akopyan to this marriage fraud ring. AR at 1-5, 76-79. According to USCIS, this marriage fraud scheme was well-documented and has, as of February 2015, resulted in 65 indictments, 58 arrests, and 55 convictions. *Id.* at 79. USCIS notified plaintiffs of the evidence uncovered in this investigation that it used in determining the *bona fides* of Mr. Akopyan's marriage to Ms. Taylor. *Id.* at 76-79. This evidence included documents from a search and seizure of several computers belonging to Bozhidar Bakalov as the leader the fraudulent marriage ring. *Id.* at 77. Mr. Akopyan and Ms. Taylor's names appeared on a "Customer and Job List" as well as details of payments invoiced and balances owed. ICE also seized a blank but signed Petition to Remove Conditions on Residences form with Ms. Taylor's name and signature in this search. *Id.* Further, Ms. Taylor told the USCIS investigator

12

that she was introduced to Mr. Akopyan by a man named Greg Coyle, a name that appeared in documents as a customer of the same marriage fraud rings. *Id.* at 78. While plaintiffs take issue with the use of Ms. Taylor's testimony, they do not contest or even address the evidence uncovered by the ICE investigation into Bozhidar Bakalov in their brief.

USCIS notified plaintiffs in this second NOID, issued on December 8, 2014, that it would not make a final decision on the I-130 petition for thirty days, and that they could submit evidence to overcome the reasons for denial in that time. AR at 79. Plaintiffs hired new counsel on January 5, 2015, and on January 7, 2015, counsel submitted a letter to USCIS requesting a 90 day extension to respond to the NOID. *Id.* at 59. USCIS denied the request to extend citing 8 CFR 103.2 (b)(8)(iv), which states "in no case . . . shall the maximum response time provided in a notice of intent to deny exceed thirty days. Additional time to respond to a request for evidence or notice of intent to deny may not be granted." *Id.* at 59. USCIS denied Ms. Simonyan's I-130 on February 9, 2015, and the BIA affirmed this decision in September 2015 after conducting a de novo review pursuant to 8 C.F.R. § 1003.1(d)(3)(iii) and concluding that there was substantial and probative evidence of marriage fraud to support the denial of the visa petition. I also conclude that this decision is supported by substantial and probative evidence, that USCIS observed procedure required by law in giving plaintiffs notice of and an opportunity to respond to the "full scope of derogatory information" relied upon by USCIS, and that there is no violation of the APA.

**B. Due Process**

Plaintiffs also claim that USCIS violated the Due Process Clause of the Fifth Amendment in not giving Mr. Akopyan an opportunity to confront and cross-examine Ms. Taylor as an adverse witness. To support this theory of due process violation, plaintiffs cite a Ninth Circuit

13

case, *Ching v. Mayorkas*, 725 F. 3d 1149 (9th Cir. 2013), as persuasive authority. I find that this case is factually inapposite here, and conclude that there was no analogous due process violation in the denial of Ms. Simonyan's I-130 petition.

In *Ching*, the Ninth Circuit, in reversing the BIA's finding of marriage fraud, overturned the BIA's determination that Ching's ex-husband, Fong, was credible and Ching was not based only on a statement from Fong denying the validity of the marriage in the face of substantial evidence that supported the *bona fides* of the relationship. In *Ching*, the BIA used a "very terse" six-sentence sworn statement from the ex-husband against the petitioner's "21-paragraph sworn declaration . . . describing in excruciating detail her intimate relationship with Fong," where the petitioner also provided "photographs of the couple, joint utility bills, an apartment lease, and a letter Fong had previously written to USCIS." *Id.* at 1153. Applying the three-factor test from *Matthews*, 424 U.S. at 335, the Ninth Circuit held that "[w]hen there is such compelling evidence to rebut the prior spouse's claim of marriage fraud, there is a high risk of erroneous deprivation when the agency relies exclusively on written evidence." 725 F. 3d at 1158. As discussed in the previous section, USCIS did not rely exclusively on the statements of Ms. Taylor, but instead had extensive evidence corroborating the existence of marriage fraud in the relationship.

Moreover, though plaintiffs responded to the first NOID, since then, they have not offered any new evidence to rebut Ms. Taylor's sworn testimony or the documents implicating them as customers in a marriage fraud ring. "To prevail on a due process claim, an alien must establish not only error, but prejudice." *Alzainati v. Holder*, 568 F. 3d 844, 851 (10th Cir. 2009). Plaintiffs do not contend that cross-examination of Ms. Taylor could produce evidence that would overcome the indicators of fraud that are independent of Ms. Taylor's statements. On

14

these facts, I do not find that there was a due process violation in denying Mr. Apokyan an opportunity to cross-examine his ex-wife.

## CONCLUSION AND ORDER

For the reasons stated herein, Plaintiffs' motion, ECF No. 40, is DENIED.

DATED this 29th day of November, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge